IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

AUGUST 1997 SESSION

FILED

March 23, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 03C01-9609-CR-00336 |
| Appellee, | * | SULLIVAN COUNTY |
| VS. | * | Hon. R. Jerry Beck, Judge |
| MICHAEL K. CHRISTIAN, JR., | * | (Attempted First Degree Murder, Attempted Aggravated Kidnapping, |
| Appellant. | * | Burglary (2 counts), Theft over $500, Theft under $500) |

For Appellant:

Gale Flanary
Assistant Public Defender
P.O. Box 839
Blountville, TN 37617

For Appellee:

Charles W. Burson
Attorney General & Reporter

Timothy F. Behan
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

Joseph Eugene Perrin
Assistant District Attorney General
P.O. Box 526
Blountville, TN 37617

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

## OPINION

The defendant, Michael K. Christian, Jr., was convicted of attempted first-degree murder, attempted aggravated kidnapping, two counts of burglary, theft over $500, and theft under $500. The trial court imposed an effective sentence of twenty-five years.

> In this appeal of right, the defendant raises the following issues:
>
> (I) whether the evidence is sufficient to support the convictions for attempted first-degree murder, the two thefts, and the two burglaries;
>
> (II) whether the counts of the presentment charging attempted first-degree murder and attempted aggravated kidnapping should have been dismissed for failure to allege the essential elements of the offenses;
>
> (III) whether dual convictions for attempted first-degree murder and attempted aggravated kidnapping violate due process; and
>
> (IV) whether the trial court imposed an excessive sentence.

We affirm the judgment of the trial court.

On the evening of June 30, 1995, the victim, Elizabeth Paige Adams, drove her Toyota Celica to the house of her friend Michelle Richards. She left a tape case in her unlocked vehicle. At about 10:30 or 11:00 P.M., Ms. Adams and Ms. Richards traveled to the Rocking Horse Bar in a car driven by Jason Patterson. When the three returned to Ms. Richards' house at 2:00 or 3:00 A.M. on July 1, 1995, Ms. Adams, who was the designated driver, was unable to maneuver the car into the driveway due to mechanical difficulties. An individual Ms. Adams later identified as the defendant then approached the vehicle and helped push the car into the driveway. At that point, Ms. Adams and Ms. Richards helped Patterson,

2

who was intoxicated, into Ms. Richards' house. Patterson's car was also left unlocked.

Later, as the victim started to leave, the defendant confronted her outside and ordered her to "get in [her] car." Ms. Adams recognized him as the same person who earlier had helped push Patterson's car in the driveway. The defendant grabbed her from behind and pulled her towards her vehicle. When the victim "went dead weight," the defendant stabbed her twice, once in her chest and once in her hand, and then ran away. The day after the stabbing, a neighbor found Ms. Adams' tape case in Ms. Richards' yard. After her release from the hospital four days later, Ms. Adams noticed the tape case was missing from her car.

Ms. Adams was unable to identify the defendant in a photographic lineup. She did, however, make a positive identification when she saw the defendant at his arraignment.

At trial, Michelle Richards testified that she accompanied the victim to the hospital. When she returned home, she checked Patterson's car and discovered several compact discs were missing. Ms. Richards was able to identify the defendant at a photographic lineup as the person who helped push the car into the driveway.

Jason Patterson testified that there were around eighty compact discs in his vehicle. He estimated the value of the missing discs at well over five-hundred dollars.

David Carter, who had known the defendant all of his life, testified that

on the evening before the stabbing, the defendant asked to borrow a knife.  Carter consented and did not see the defendant again until sometime between 4:30 and 5:30 A.M., just after the incident at Ms. Richards' house, when the defendant admitted that he had just stabbed someone.  Carter, who described the defendant as scared and pacing the floor, then heard the defendant explain that he was breaking into someone's car and when the victim approached the vehicle, he just "snapped."  Carter testified that the defendant admitted stealing some compact discs.  A few days later, the defendant informed Carter that he had soaked the knife in bleach.

Buford Williams, a defense witness, testified that he witnessed Ms. Adams and another individual trying to push the Patterson car into Ms. Richards' driveway.  Williams, who claimed that he knew the defendant "by sight" contended that the individual assisting Ms. Adams was not the defendant.

I

The defendant, who concedes that the evidence adequately supported the attempted aggravated kidnapping conviction, argues that the evidence is insufficient to establish the attempted first-degree murder, burglary, and theft convictions.  On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978).  When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential

4

elements of the crime beyond a reasonable doubt.  State v. Williams, 657 S.W.2d

405, 410 (Tenn. 1983);  Tenn. R. App. P. 13(e).


Initially, the defendant argues that there is insufficient evidence of the

element of premeditation to support the attempted first-degree murder conviction.

The law in effect when the defendant committed the offense provided that first

degree murder is a "premeditated and intentional killing of another."  Tenn. Code

Ann. § 39-13-202(a)(1)(Supp. 1995).[1]  Subsection (d) of that statute provides further

guidance on premeditation:

> As used in subdivision (a)(1) "premeditation" is an act
> done after the exercise of reflection and judgment.
> "Premeditation" means that the intent to kill must have
> been formed prior to the act itself.  It is not necessary
> that the purpose to kill pre-exist in the mind of the
> accused for any definite period of time.  The mental state
> of the accused at the time the accused allegedly decided
> to kill must be carefully considered in order to determine
> whether the accused was sufficiently free from
> excitement and passion as to be capable of
> premeditation.

Tenn. Code Ann. § 39-13-202(d)(Supp. 1995).


> Our law defines criminal attempt as follows:
>
> (a) A person commits criminal attempt who, acting with
> the kind of culpability otherwise required for the offense:
>
>> (1) Intentionally engages in action or causes a
>> result that would constitute an offense if the
>> circumstances surrounding the conduct were as the
>> person believes them to be;
>
>> (2) Acts with intent to cause a result that is an
>> element of the offense, and believes the conduct will
>> cause the result without further conduct on the person's
>> part;  or

---

[1]Effective July 1, 1995, the date the defendant committed the crime, the requirement that the killing be accomplished deliberately was dropped from the Code.  See Tenn. Code Ann. § 39-13-202(a)(1) (Supp. 1995).

> (3) Acts with intent to complete a course of action
> or cause a result that would constitute the offense, under
> the circumstances surrounding the conduct as the
> person believes them to be, and the conduct constitutes
> a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a).

Here, the proof established that the defendant acquired a knife from a friend earlier in the day. After helping the victim push the Patterson vehicle into Ms. Richards' driveway, the defendant waited outside until the victim left her friend's house. At that point, he grabbed her and inflicted two stab wounds. These facts support an inference that the defendant committed the assault with premeditation. That there were two separate wounds supports the jury's conclusion that the defendant's conduct rose to the level of attempted first-degree murder. See Tenn. Code Ann. § 39-12-101. Dr. Lewis testified that the victim's lung had been punctured by the knife. Thus, the defendant's actions qualified as a "substantial step" toward killing the victim. See Tenn. Code Ann. § 39-12-101. The jury could have determined that the defendant committed the assault only after being surprised by the arrival of the victim during the vehicle burglary. The equally plausible theory of the state was that the defendant had been lying in wait for the victim. In our view, there was sufficient evidence to support the jury's determination that there was premeditation.

We reject the defendant's argument that the state was also required to prove deliberation because the presentment erroneously referred to the date of the offense as June 30, 1995. The presentment also charged the offense as occurring on July 1, 1995. Our law requires the defendant to be prosecuted under the law in effect when the crime was committed. See Tenn. Code Ann. § 39-11-112. The proof established that the offense occurred on July 1, 1995. In our view, the

evidence is sufficient to establish each of the elements of attempted first-degree murder as defined on the latter date.

The defendant also argues that there was insufficient evidence to support the burglary and theft convictions. The two burglary convictions were based on the defendant's breaking in to the Adams and Patterson vehicles. The theft under $500 was based on the defendant's taking of the tapes from the Adams vehicle, while the theft over $500 was based on the defendant's taking of the compact disc collection from Patterson's car. The defendant argues there is no evidence that he committed these crimes. We cannot agree.

"A person commits burglary who, without the effective consent of the owner ... [e]nters any .. automobile ... with intent to commit a ... theft." Tenn. Code Ann. § 39-14-402(a)(4)(Supp. 1995). A theft occur when "with the intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. Carter testified that the defendant told him that he stabbed someone while breaking into "their car." This testimony establishes the burglary of the Adams car. The defendant also told Carter that he removed some compact discs from "the car." Patterson testified that the compact disc collection was worth more than five hundred dollars. These facts establish the Patterson burglary and theft.

The remaining issue is whether there is any proof of the Adams theft. In our view, there is sufficient circumstantial evidence to support the determination that the defendant stole the tapes from the Adams car. A crime may be established by the use of circumstantial evidence only. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958). An

7

accused may be convicted of a criminal offense based upon circumstantial evidence alone so long as the facts and circumstances are "so strong and cogent as to exclude [beyond a reasonable doubt] every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971). "A web of guilt must be woven around the defendant ... from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Id. at 613.

Here, Ms. Adams testified that she left the tape case in her car on the evening of June 30. She identified the defendant as her assailant. The defendant confessed to Carter that he had broken into a vehicle just as he was discovered by the victim. The day after the attack, a neighbor found the tape case near where the attack occurred. This circumstantial evidence supports the jury's conclusion that the defendant had stolen the tapes.

II

The defendant next argues that the trial court erred by overruling his motion to dismiss two counts of the presentment. Specifically, he contends the counts charging attempted first-degree murder and attempted aggravated kidnapping are fatally defective for failing to allege the essential elements of those crimes.

Generally, an indictment must set forth the elements of the offense. State v. Perkinson, 867 S.W.2d 1, 5 (Tenn. Crim. App. 1992). It is settled law that "[w]hen the indictment or presentment fails to fully state the crime, all subsequent proceedings are void." Id. (citing State v. Morgan, 598 S.W.2d 796, 797 (Tenn. Crim. App. 1979)).

8

Provisions of state and federal constitutions guarantee the criminally accused knowledge of "the nature and cause of the accusation." U.S. Const. amend. VI; Tenn. Const. art I, § 9. "Fair and reasonable notice of the charges against an accused is a fundamental constitutional requirement." State v. Trusty, 919 S.W.2d 305, 309 (Tenn. 1996). To be sufficient, an indictment must "inform the defendant of the precise charges; ... must enable the trial court upon conviction to enter an appropriate judgment; ... and must protect [the] defendant against double jeopardy." Id. As a matter of fairness, the constitutional requirement is designed to afford the criminally accused with an adequate opportunity to prepare any defense before the trial. See, e.g., Pope v. State, 258 S.W. 775 (Tenn. 1924); Daniel v. State, 50 Tenn. 257 (1871).

In Perkinson our court explained the rationale for requiring the indictment to charge the essential elements of the offense:

> To allow a prosecutor or court to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection that the grand jury was designed to secure, because a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury that indicted him.

867 S.W.2d at 5 (quoting United State v. Cecil, 608 F.2d 1294, 1297 (9th Cir. 1979)).

In State v. Marshall, 870 S.W.2d 532, 536 (Tenn. Crim. App. 1993), however, this court held that the failure to specifically allege an element of the offense is not fatal "if the elements are necessarily implied from the allegations made" (citing Hagner v. United State, 285 U.S. 427 (1932)). In our view, the ruling in Marshall controls these circumstances. If the offense is alleged in such a way that the defendant cannot fail to be apprised of the elements of the offense, the

9

charge is sufficient, notwithstanding the fact that an element may not be specifically alleged.

(A)

The count charging attempted first-degree murder alleges as follows:

[the defendant] on June 30, 1995, through July 1, 1995,
... unlawfully, feloniously, knowingly and with
premeditation did attempt to kill another, Paige Adams,
by stabbing [her] with a deadly weapon ... which conduct
constituted a substantial step toward the commission of
the said offense....

The defendant argues this presentment is defective because (1) it does not allege that he acted deliberately or intentionally, and (2) it does not allege that he acted "with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." See Tenn. Code Ann. § 39-12-101(a)(3).

On June 30, 1995, a first-degree murder was defined as an "intentional, premeditated and deliberate killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (1991). Had that been the controlling date, we would have held the presentment insufficient to charge attempted first-degree murder as it was defined at that time. The presentment had to necessarily imply that the killing was intentional, premeditated, and deliberate. While allegations of an attempted premeditated homicide are sufficient to necessarily imply the act was intentional, direct allegations that the killing was intentional and deliberate are missing. "Attempt" in criminal law means "[a]n intent to commit a crime coupled with an act taken toward committing the offense." Black's Law Dictionary, 127 (6th ed. 1990). The allegation that the defendant attempted to kill the victim necessarily implies that he intended to kill her. Also, a "premeditated act" is an act done "after the exercise

10

of reflection and judgment." Tenn. Code Ann. § 39-13-201(2) (1991). "The element of premeditation requires a previously formed design or intent to kill." State v. West, 844 S.W.2d 144, 147 (Tenn. 1992) (emphasis added). See also Tenn. Code Ann. § 39-13-202(d)(Supp. 1995) (amending the statutory definition of premeditation to provide "it means that the intent to kill must have been formed prior to the act itself"). Accordingly, the presentment necessarily implies the attempted homicide was intentional. Nothing in the charging instrument, however, would necessarily imply that the killing was deliberate. Deliberation occurs when one acts "with a cool purpose." Tenn. Code Ann. § 39-13-202 (1991). The allegations in the presentment do not necessarily imply that the killing was accomplished with a cool purpose. If the old Act were still applicable, this presentment would have been defective.

Under the amended Act, however, effective July 1, 1995, first-degree murder was redefined by statute as an intentional, premeditated killing. It is a statutorily defined offense. Because the allegations of an attempted premeditated homicide necessarily imply an intentional act, the presentment adequately charges the offense under the amended Act.

In our view, there is a legitimate question as to whether the presentment, which alleged that the offense occurred on "June 30, 1995, through July 1, 1995," sufficiently alleges the time of the offense. In State v. West, 737 S.W.2d 790, 792 (Tenn. Crim. App. 1987), our court stated the rule as follows:

> The rule to be deduced from our cases is that, where there is no statute of limitations barring the offense, it is unnecessary to state the day, or even the year, but it is sufficient to aver generally that the offense was committed before the finding of the indictment: that it is not necessary to state in any case the day on which the offense was committed, unless the day itself is of the essence of the offense, as of offenses committed against

11

laws passed for the preservation of the Sabbath, <u>or</u>
<u>unless the time is important to bring the offense within</u>
<u>the operation of new or amended statutes or the like....</u>

(emphasis added) (quoting <u>State v. Shaw</u>, 82 S.W. 480 (Tenn. 1904)).  In this case, the time of the offense should be alleged "to bring the offense within the operation of new or amended statutes ...."  <u>Id.</u>  The presentment should have provided the exact date the crime occurred.  Because, however, there is mention of July 1, 1995, we must conclude that the defendant was placed on notice that the time of the offense might be an issue.  The state's response to the defendant's discovery requests indicated that the crime actually occurred on July 1, 1995.  Thus, the defendant was aware that the amended statute applied.  Also important to our determination is that the evidence overwhelmingly establishes that the crime was committed on July 1, 1995.  There was no evidence that the attempt to murder occurred June 30, 1995.

In our view, the jurisdictional concerns raised in <u>Perkinson</u>, 867 S.W.2d at 5, have been addressed.  The indictment alleges or "necessarily implies" all of the elements of the offense as defined on July 1, 1995.  Thus, the defendant was not placed on trial for a crime greater or different than authorized by the grand jury.  <u>Id.</u>  The state provided adequate notice of the date of the offense.  <u>See</u> <u>State</u> <u>v. Speck</u>, 944 S.W.2d 598, 600 (Tenn. 1997) (commenting that a bill of particulars may be used to inform the defendant of the date of the offense).  Under these circumstances, we find no reversible error pertaining to the presentment's failure to more specifically allege the date of the offense or the failure to specifically allege intentional or deliberate conduct.

(B)

The defendant also argues the presentment is defective because it

12

fails to sufficiently allege the element of attempt. The charging instrument alleges

the defendant "did attempt to kill [the victim] by stabbing [her] with a deadly weapon

... which conduct constituted a substantial step toward the commission of the said

offense." The defendant contends that the following language should have been

included: "with intent to complete a course of action or cause a result that would

constitute the offense, under circumstances surrounding the conduct as the person

believes them to be, and the conduct constitutes a substantial step toward the

commission of the offense." See Tenn. Code Ann. § 39-12-101(a)(3).

"An indictment or information charging an attempt to commit a crime

should specifically allege intent and the overt act done toward commission of the

offense ...." Indictments and Informations, 41 Am. Jur. 2d, § 132, p. 748 (2d Ed.

1995) (footnotes omitted). In Gervin v. State, 371 S.W.2d 449, 451 (Tenn. 1963),

our supreme court ruled that an indictment charging solicitation would not sustain a

conviction for attempt. The court described criminal attempt as follows: "An attempt

... requires ... (1) an intent to commit a specific crime; [and] (2) an overt act ...."[2] In

attempts, the intent must be to commit the contemplated crime. ... To constitute an

attempt there must also be an act of perpetration, that is an overt act." Id. (citations

omitted).

This general concept of criminal attempt carried over into the 1989

codification of criminal attempt:

> Criminal attempt is an offense directed at the
> individual whose intent is to commit an offense, but
> whose actions, while strongly corroborative of criminal
> intent, fail to achieve the criminal objective intended.
> Accordingly, the offense is basically one of criminal intent

---

[2]The court also held that attempt requires a "failure to consummate the crime." Gervin, 371 S.W.2d at 451. That portion of Gervin has been abrogated by statute: "it is no defense to prosecution for criminal attempt that the offense attempted was actually committed." Tenn. Code Ann. § 39-12-101(c).

> coupled with acts that clearly demonstrate the offender's proclivity toward criminality.

Sentencing Commission Comments to Tenn. Code Ann. § 39-12-101.

In our view, the allegation of the attempt to commit the homicide coupled with the allegation that the defendant stabbed the victim with a deadly weapon, which conduct was a substantial step toward commission of the offense, is sufficient. It is not necessary that the indictment quote the attempt statute verbatim. "Obviously, the description of the proof necessary to sustain a conviction must be both more inclusive and conclusive than the language of an indictment." State v. Hill, 954 S.W.2d 725, 728 (Tenn. 1997).

## (C)

The count charging attempted aggravated kidnapping alleges as follows:

> [the defendant] unlawfully, feloniously and knowingly did attempt to confine another, Paige Adams, so as to interfere substantially with [her] liberty so as to facilitate the commission of any felony or flight thereafter and during the course of the attempted kidnapping, Paige Adams suffered bodily injury as a result of the defendant's possession of a deadly weapon, which conduct by the defendant constituted a substantial step toward the commission of the said offense ....

The defendant argues this presentment is insufficient for failing to allege that the defendant "intentionally engages in" or "acts with intent" required under the criminal attempt statute. See Tenn. Code Ann. § 39-12-101. For the same reasons appearing in the previous parts of this opinion, it is our view that the mens rea was necessarily implied by the language of the presentment. Thus, we find this challenge to the attempted aggravated kidnapping charge to be without merit.

14

III

The defendant next contends that convictions for both attempted first-degree murder and attempted aggravated kidnapping violate the due process guarantees of Article I, Section 8 of the Tennessee Constitution as announced in State v. Anthony, 817 S.W.2d 299 (Tenn. 1991). We cannot agree.

In Anthony, our supreme court addressed the issue of whether dual convictions of armed robbery and aggravated kidnapping violated the due process guarantees of Article I, Section 8 of the Tennessee Constitution. The court concluded that when a confinement, movement, or detention is "essentially incidental" to the accompanying felony, it is not sufficient to support a separate conviction for kidnapping. Id. at 306. The court warned that the kidnapping statute should be narrowly construed "so as to make its reach fundamentally fair and to protect the due process rights of every citizen ...." Id.

The test applied in Anthony, as taken from Faison v. State, 426 So.2d 963, 965 (Fla.1983), was as follows:

> [I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
>
> (a) Must not be slight, inconsequential and merely incidental to the other crime;
>
> (b) Must not be of the kind inherent in the nature of the other crime; and
>
> (c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

817 S.W.2d at 306 (alteration in original).

15

In Anthony, the supreme court noted that every robbery involved some confinement and, therefore, necessarily included a kidnapping. It ruled, however, that the legislature did not intend for every robbery to also be a kidnapping. Id. More recently, the court explained the limitations of the Anthony rule:

> Anthony and its progeny, however, are not meant to provide the rapist a free kidnapping merely because he also committed rape. The Anthony decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery. Accordingly any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping.

State v. Ricky Michael Dixon, _____ S.W.2d _____, No. 03S01-9704-CR-00043, slip op. at 6 (Tenn., at Knoxville, Dec. 15, 1997) (footnote omitted).

The reasoning of Anthony has yet to be applied to an attempted aggravated kidnapping conviction. Even if it did apply, this court would not extend the rationale of the opinion to these circumstances. The defendant could have committed the attempted homicide without having committed an attempted kidnapping. Proof of the attempted homicide did not necessarily establish an attempted kidnapping. In our assessment, the attempted kidnapping was supported by facts separate and apart from the attempted homicide. The defendant twice ordered the victim to get in the car and then attempted to drag her towards the vehicle. These facts establish the kidnapping as more than merely incidental to the attempted homicide. There has been no abridgement of due process.

IV

Finally, the defendant argues the trial court acted excessively by imposing an effective sentence of twenty-five years. The defendant, a Range I offender, was sentenced as follows:

16

| Count | Offense | Sentence |
|-------|---------|----------|
| 1 | att. first degree murder | 21 years |
| 2 | burglary | 1 year |
| 3 | theft over $500 | 1 year |
| 4 | burglary | 1 year |
| 5 | theft under $500 | 11 months, 29 days |
| 6 | att. agg. kidnapping | 4 years |

(to be served consecutively to count (1)).

The defendant argues the trial court erred as to Count One by beginning at the midpoint in the range in imposing the sentence and as to Count Six, by ordering a consecutive term. We do not agree.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

17

At the time of this offense, the presumptive sentence was the minimum in the range for all of the offenses, except the attempted first-degree murder. For that offense, the trial court was required to start at the midpoint in the range. See Tenn. Code Ann. § 40-35-210 (amended effective July 1, 1995, to make the presumptive sentence for a Class A felony the midpoint in the range, absent enhancement or mitigating factors). Should the trial court find mitigating and enhancement factors, it must start at the presumptive sentence and enhance the sentence based upon any applicable enhancement factors, then reduce the sentence based upon the appropriate mitigating factors. Tenn. Code Ann. § 40-35-210(e). The weight given to each factor is within the trial court's discretion provided that the record supports its findings and it complies with the Sentencing Act. See Ashby, 823 S.W.2d at 169. The trial court should, however, make specific findings on the record which indicate its application of the sentencing principles. Tenn. Code Ann. §§ 40-35-209 and -210.

The presentence report shows that the defendant, age nineteen at the time of sentencing, had several adjudications as a juvenile. In 1988, he was found "ungovernable." Thereafter, he violated a court order, maliciously set a fire, stole an automobile, and committed an aggravated assault and three simple assaults. Several times he has been placed with the Department of Human Services and with the Department of Youth Development. The defendant has a lengthy history of suicide attempts. While under the care of the Department of Youth Development, he was diagnosed as having the following impairments: conduct disorder, solitary aggressive type, chronic post traumatic stress disorder, depressive type, episodic explosive behavior, and adolescent depressive reaction. The defendant indicated he has used alcohol since the age of eleven. He also admits to the use of marijuana and cocaine on a fairly regular basis.

18

In 1988, when the defendant was about twelve years old, his mother was killed in a car wreck. About one year later, the defendant's father surrendered his custodial rights and the defendant was placed in custody of the Department of Human Services. Due to his youth, the defendant has virtually no work history.

Effective July 1, 1995, the legislature amended Tenn. Code Ann. § 40-35-210 to require that the presumptive sentence for a Class A felony is the midpoint in the range. See Sentencing Commission Comments to Section 40-35-210. The defendant argues that because the indictment charging the offense alleges it occurred on "June 30, 1995 through July 1, 1995," he should be sentenced under the law in effect prior to the 1995 amendment.

While the original presentment was unclear as to when the offense was actually committed, there was an allegation that the offense occurred "through July 1, 1995." The state informed the defendant in advance of trial that the crime was committed on July 1, 1995. The proof established that the crime was committed on July 1, 1995. Our law requires that the defendant be "prosecuted under the act or statute in effect at the time of the commission of the offense." Tenn. Code Ann. § 39-11-112. Thus, the midpoint of the range was an appropriate beginning.

We now turn to the appropriateness of ordering the attempted kidnapping sentence to be served consecutively to the attempted murder conviction. Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case our supreme court ruled that aggravating circumstances must be present before placement in any one of the

19

classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution: "[C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved." State v. Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[3] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental

---

[3]The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

damage to the victim or victims;

(6)  The defendant is sentenced for an offense committed while on probation;

(7)  The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

In Gray, our supreme court ruled that before consecutive sentencing could be imposed upon the dangerous offender, as now defined by subsection (b)(4) in the statute, other conditions must be present:  (a) that the crimes involved aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses.

More recently, in State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate[] to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct."  The Wilkerson decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules." State v. Wilkerson, 905 S.W.2d at 938.  The record must show that the sentencing principles and all relevant facts and circumstances were considered before the presumption of correctness applies.

The statute defines the dangerous offender as one "whose behavior indicates little or no regard for human life, and no hesitation about committing a

21

crime in which the risk to human life is high ...." Tenn. Code Ann. § 40-35-115(4). Wilkerson, however, requires more for the imposition of consecutive sentences. In order to merit the presumptive correctness of the consecutive sentences, the trial court must have also found that the circumstances of the crimes were aggravated; the aggregate sentence must reasonable relate to the severity of the offenses; and the total sentence must be necessary for the protection of the public from further crimes by the defendant.

The trial court ruled that the defendant was a dangerous offender and ordered the attempted kidnapping sentence to be served consecutively. The court concluded that the defendant's conduct "exhibited no regard for human life"; that he "inflicted very serious near death wounds upon" the victim; and that "confinement for an extended period of time is necessary to protect society." The trial court found "little indication of successful rehabilitation in this case based upon the ... presentence report."

The record in this case confirms that the trial court made appropriate findings of fact on the record. Our scope of review is de novo with a presumption of correctness. Clearly, the proof supports the trial court's determination that the defendant qualified as a dangerous offender. He charged the victim, grabbed her and stabbed her twice. While the defendant was only nineteen years old at the time of the offense, he had a lengthy juvenile record and had not responded to numerous attempts at rehabilitation. See Tenn. Code Ann. § 40-35-103. Moreover, the defendant had exhibited an escalating pattern of violence. The defendant has graduated from assault to his current crimes of attempted kidnapping and murder. This pattern suggests a need to protect the public.

Accordingly, the judgment of the trial court is affirmed.

_____

Gary R. Wade, Judge

CONCUR:

_____

Paul G. Summers, Judge

_____

William M. Barker, Judge